IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

GENARO PEREZ CASTILLO, #294507,      )
                                     )
         Plaintiff,                  )
                                     )
v.                                   )   CASE NO. 3:14-CV-987-WKW
                                     )          (WO)
                                     )
CATHY DUBOSE, et al.,                )
                                     )
         Defendants.                 )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I. INTRODUCTION

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Genaro Perez Castillo ("Castillo"), a state inmate, alleging that the defendants acted with deliberate indifference to an infection in his knee during a prior term of incarceration at the Tallapoosa County Jail. Castillo names Nurse Cathy Dubose and Jail Administrator Blake Jennings as defendants. He seeks declaratory relief and monetary damages for the alleged violation of his constitutional rights.

The defendants filed an answer, special report, supplemental special report and supporting evidentiary materials, including affidavits and certified medical records, addressing Castillo's claim for relief. After receipt of the defendants' special report, the court issued an order directing Castillo to file a response to each of the arguments set forth by defendants in their report and advising him that such response should include affidavits or statements made under penalty of perjury and other relevant evidentiary materials. *Doc. No. 16* at 3. The order specifically cautioned that "unless within ten (10) days from the date of this order a party ...

presents sufficient legal cause why such action should not be undertaken ... the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and without further notice to the parties (1) treat the special report and any supporting evidentiary materials as a [dispositive] motion ... and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." *Doc. No. 16* at 4 (footnote omitted).  Castillo filed a response to this order on February 23, 2015 addressing the exhaustion defense raised by the defendants.  *Doc. No. 18.*  On September 9, 2015, Castillo filed a supplemental response in which he addresses both the exhaustion defense and the merits of his deliberate indifference claim.  *Doc. No. 28.*[1]  Based on the arguments set forth by Castillo in this latter response, the court ordered the defendants to file a supplement to their special report and provided Castillo an opportunity to file a response to such report, if he chose to do so.  *Doc. No. 31.*  The defendants filed a supplemental special report on September 30, 2015 (Doc. No. 32) but Castillo filed no response to the defendants' supplemental report.

In accordance with the order entered on January 12, 2015, the court deems it appropriate to treat the defendants' reports as a motion for summary judgment.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof, the sown complaint and Castillo's responses to

---

[1]Castillo argues that he could not access the grievance procedure at the Tallapoosa County Jail because he speaks and understands only Spanish, whereas the grievance procedure and all forms were only available to inmates in English.  *Doc. No. 28* at 1-2.  Castillo further asserts that he "was never given an (inmate handbook)" nor "provided with anything written in Spanish about the grievance procedure." *Id.* at 2.  The defendants do not dispute these facts but argue that such did not render the grievance procedure unavailable to Castillo. The defendants rely on *Albino v. Baca*, 697 F.3d 1023 (9th Cir. 2012), a panel opinion issued on September 21, 2012, as support for their argument. The defendants' reliance on this opinion is misplaced and not well taken as the Ninth Circuit overruled this decision in an en banc opinion issued on February 3, 2014 - *Albino v.* Baca, 747 F.3d 1162 (9th Cir. 2014).  Based on the assertions set forth by Castillo regarding lack of availability of the grievance procedure, the court deems it appropriate to forego discussion of the exhaustion defense and proceed to the merits of the claims presented in the complaint.

the reports, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [now dispute] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Williamson Oil Company, Inc. v. Phillip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003) (moving party bears the initial burden of establishing there is no genuine dispute as to any material fact); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (same).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by demonstrating that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which

---

[2]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id*.  "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Despite these stylistic changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-324; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (the moving party discharges his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial).

The defendants have met their evidentiary burden. The burden therefore shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."); *Jeffery*, 64 F.3d at 593-594 (internal quotation marks omitted) (Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007). In civil actions filed by inmates, federal courts

> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to

> sufficient evidence regarding such issues of judgment to allow him to prevail on
> the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal

citation omitted).

To proceed beyond the summary judgment stage, an inmate-plaintiff is required to

produce "sufficient [favorable] evidence" which would be admissible at trial supporting his

claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986);

Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party

relies] is merely colorable ... or is not significantly probative ... summary judgment may be

granted." *Anderson*, 477 U.S. at 249-250. "A mere 'scintilla' of evidence supporting the

opposing party's position will not suffice; there must be enough of a showing that the [trier of

fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct.

2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir.

1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a

genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary

judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory

assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand

summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary

judgment appropriate where inmate produces nothing beyond "his own conclusory allegations"

challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984)

("Mere verification of party's own conclusory allegations is not sufficient to oppose summary

judgment."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory

allegations without specific supporting facts have no probative value."). Hence, when a plaintiff

fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (summary judgment appropriate where no genuine dispute of material fact exists). At the summary judgment stage, this court must "consider all evidence in the record ... [including] pleadings, depositions, interrogatories, affidavits, etc. -- and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists." *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Liberty Lobby*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here

must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F.Supp.2d 1297, 1301 (M.D. Fla. 2011) (citing *Liberty Lobby*, *supra*).

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus,

the plaintiff's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After such review, the court finds that Castillo has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

### III. DISCUSSION

Castillo asserts that Nurse Dubose denied him adequate medical treatment for an infection in his right knee. Castillo also appears to argue that Jail Administrator Jennings acted with deliberate indifference because Jennings failed to intervene regarding the course of treatment provided by Nurse Dubose. The defendants deny they acted in violation of Castillo's constitutional rights. As discussed in detail below, Castillo fails to demonstrate a genuine dispute of material fact sufficient to preclude entry of summary judgment in favor of the defendants.

### A. Applicable Legal Standard

Castillo complains that Nurse Dubose acted with deliberate indifference to an infection in his knee which he attributed to a spider bite. *Doc. No. 1-2* at 4-8. The actions about which Castillo complains occurred in December of 2012 during his confinement in the Tallapoosa County Jail. It is undisputed that Castillo was a pretrial detainee at the time relevant to the complaint. Castillo's claims are therefore subject to review under the Due Process Clause of the Fourteenth Amendment which prohibits the imposition of punishment on those who have not yet been convicted of a crime, rather than the Eighth Amendment's prohibition against cruel and unusual punishment which governs claims of convicted inmates. *Bell v. Wolfish*, 441 U.S. 520,

99 S.Ct. 1861 (1979); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners."). "[I]n regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons." *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986). As to these claims, the Eleventh Circuit has long held that "the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees." *Cottrell*, 85 F.3d at 1490; *Hamm*, 774 F.2d 1574 (holding that for analytical purposes, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment.); *Tittle v. Jefferson County Commission*, 10 F.3d 1535, 1539 (11th Cir. 1994) (observing that "[w]hether the alleged violation is reviewed under the Eighth or Fourteenth Amendment is immaterial.").

The Eleventh Circuit has likewise consistently

> recognize[d] that the limitations imposed by the eighth amendment and the due process clause arise in different contexts. Nonetheless, with respect to the provision of basic necessities to individuals in the state's custody, the two provisions necessarily yield the same result. *Cf. Jones* [*v. Diamond*, 636 F.2d 1364, 1378 (5th Cir.), *cert. dismissed*, 453 U.S. 950 (1981)] (relies on standards articulated in eighth amendment litigation to determine the right of pretrial detainees to an adequate diet). Distinguishing the eighth amendment and due process standards in this area would require courts to evaluate the details of slight differences in conditions. Many city and county jails have convicted prisoners and pretrial detainees. That approach would result in the courts becoming "enmeshed in the minutiae of prison operations," a situation against which the Supreme Court has warned. Therefore, the level at which states provide pretrial detainees with basic necessities-in addition to being "reasonably related to a legitimate

governmental objective"-must meet the standards applied under the eighth amendment prohibition on cruel and unusual punishment, i.e. they must furnish the detainees with a reasonably adequate diet and living space, and with reference to medical needs, they must not be deliberately indifferent to detainees' serious medical needs. Life and health are just as precious to convicted persons as to pretrial detainees. The standard in regard to medical care in determining a violation of the eighth amendment is deliberately indifferent. The standard to measure the state's duty under the due process clause for pretrial detainees for medical care can equally and fairly be measured by the same standard.

*Hamm*, 774 F.2d at 1574.

In a recent decision addressing a pretrial detainee's excessive force claim, the United States Supreme Court held that under the Fourteenth Amendment the detainee "must show only that the force purposely or knowingly used against him was objectively unreasonable....  A court must make this determination from the perspective of a reasonable [official] on the scene, including what that [official] knew at the time, not with the 20/20 vision of hindsight." *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015).  The court in *Kinglesy* reaffirmed that a defendant "must possess a purposeful, a knowing, or possibly a [criminally] reckless state of mind.  That is because ... 'liability for ***negligently*** inflicted harm is categorically beneath the threshold of constitutional due process.'  *Id*. at 2472 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)).  The Court further emphasized that the 'guarantee of due process has [historically] been applied to ***deliberate*** decisions of government officials to deprive a person of life, liberty or property.'"  *Id*.

The Supreme Court has not yet ruled on whether to extend the objective reasonableness standard of review set forth in *Kingsley* to cases of pretrial detainees which do not involve the use of excessive force (i.e., cases challenging medical treatment or conditions of confinement).  However, an extensive search of post-*Kingsley* cases indicates that the vast majority of federal courts, including [this court and] the Eleventh Circuit Court of Appeals, have continued to utilize the deliberate indifference standard in deciding claims of pretrial detainees which challenge medical treatment and other conditions.  *E.g.*, *Massey v. Quality Correctional Health Care, Inc., et al.*, 2015 WL 852054 (M.D. Ala. Feb. 26, 2015), affirmed on appeal, [*Massey v. Montgomery County Detention Facility*, 646 F. App'x 777] (11th 2016) (addressing claims of a pretrial detainee challenging the medical treatment provided to him while in a county jail, without reference to *Kingsley*, and applying the deliberate indifference standard to find that the defendants' actions did not rise to the level of deliberate indifference); *McBride v. Houston County Health Auth.*, 2015 WL 3892715, *10 & 15-20 (M.D. Ala. June 24, 2015) (recognizing the impact of *Kingsley* on excessive force claims brought by pretrial detainees but subsequently applying the deliberate indifference standard to the plaintiff pretrial detainee's medical treatment claim) [*affirmed* 658

F. App'x 991 (11th Cir. 2016) (holding that district court properly applied the deliberate indifference standard of the Eighth Amendment in denying summary judgment to defendant on pretrial detainee's challenge to constitutionality of medical treatment provided for skin condition)]; *White v. Franklin*, 2016 WL 749063, at \*5-8 (N. D. Ala. Jan. 28, 2016), adopted, 2016 WL 741962 (N.D. Ala. Feb. 25, 2016) (applying *Kingsley's* objective reasonableness standard to pretrial detainee's claim of excessive force but addressing his claims of inadequate medical treatment under the deliberate indifference standard of the Eighth Amendment in accordance with prior Eleventh Circuit precedent); *Woodhouse v. City of Mount Vernon, et al.*, 2016 WL 354896, at \*10 n.4 (S.D.N.Y. Jan. 26, 2016) (applying "a subjective standard to [detainee's] Fourteenth Amendment claim of deliberate indifference to serious medical needs, just as it would to an Eighth Amendment claim brought by a convicted prisoner," despite *Kingsley*); *Thomley v. Bennett, et al.*, 2016 WL 498436, at \*7 (S.D. Ga. Feb. 8, 2016), adopted, 2016 WL 3454383 (S.D. Ga. Mar. 14, 2016) (finding *Kingsley* does not "provide[] the standard to be applied" to pretrial detainee's medical treatment claims).

As indicated above, the Eleventh Circuit recently applied the deliberate indifference standard to a pretrial detainee's claims challenging the constitutionality of medical treatment provided to him by health care personnel at a county jail.  *See Massey*, [646 F. App'x at 781].  In affirming the trial court's decision to grant summary judgment for the defendants, the Court held:

> There is ... no basis for [Plaintiff's] claim that [the defendant physicians'] diagnosis and treatment of his ailments rose to the level of deliberate indifference. There is a difference between "mere incidents of negligence or malpractice" and deliberate indifference. *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir.1991). The former, "while no cause for commendation, cannot ...  be condemned as the infliction of punishment" in violation of the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 838, 114 S.Ct. 1970, 1979 (1994). The latter, by contrast, is a violation of the Eighth Amendment, but requires the plaintiff to prove that the defendant knew of a serious risk to the plaintiff and affirmatively disregarded it. *See McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir.1999). There is no genuine dispute that [the jail physicians] actively attempted to diagnose and treat [Plaintiff]. The treatment they offered may not have been as effective or instantaneous as [Plaintiff] would have liked, but the bare fact that treatment was ineffectual or not immediately administered does not mean that those responsible for it were deliberately indifferent. Because the record does not establish a genuine dispute that [the attending physicians] made a good-faith effort to treat [Plaintiff's] ailments, summary judgment was appropriate.

> *Id*.  The Sixth, Seventh and Ninth Circuits are in accord.  *See Baynes v. Cleland*,
> 799 F.3d 600, 617-18 (6th Cir. 2015); *Smith v. Dart*, 803 F.3d 304, 310 (7th Cir.
> 2015); *Castro v. County of Los Angeles*, 797 F.3d 654, 664-65 (9th Cir. 2015).

*Smith v. Terry*, 2016 WL 4942066 at *3 (M.D. Ala. Aug. 15, 2016), Recommendation adopted,

2016 WL 4923506 (M.D. Ala. Sept. 14, 2016).

Based on the foregoing, the court deems it appropriate to apply the deliberate indifference

standard to Castillo's claim of inadequate medical treatment, instead of the objective

reasonableness standard applied to the excessive force claim before the Supreme Court in

*Kingsley*.[3]

## B.  Deliberate Indifference

To prevail on a claim concerning an alleged denial of adequate medical treatment, an

inmate must show that the defendants acted with deliberate indifference to his serious medical

needs.  *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000);

*McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033

(11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986).  Specifically, medical

personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence

deliberate indifference to serious medical needs."  *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292;

*Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations omitted)

(As directed by *Estelle*, a plaintiff must establish "not merely the knowledge of a condition, but

the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the

acknowledged necessary] treatment."

---

[3]Under the facts of this case as set forth below, the court finds that regardless of the standard applied - deliberate indifference or objective reasonableness - Castillo's claims do not survive summary judgment.

That medical malpractice-negligence by a physician-is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble,* 429 U.S. 97, 105-07, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995). Instead, something more must be shown. Evidence must support a conclusion that a prison physician's harmful acts were intentional or reckless. *See Farmer v. Brennan,* 511 U.S. 825, 833-38, 114 S.Ct. 1970, 1977-79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams,* 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to set forth a cognizable claim of "deliberate indifference to [a] serious medical need ..., Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-1307 (11th Cir. 2009). When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, defendant must know of and then disregard an excessive risk to prisoner's health or safety). Regarding the objective component of a deliberate indifference claim, the plaintiff must first show "an objectively 'serious medical need[]' ... and second, that the response made by [the defendants] to that need was poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligen[ce] in diagnos[is] or treat[ment],' or even '[m]edical malpractice'

actionable under state law." *Taylor*, 221 F.3d at 1258 (internal citations omitted).[4]   This is likewise true for a claim reviewed under the objective reasonableness standard.  Thus, to proceed on a claim challenging the constitutionality of medical care under either standard of review, "[t]he facts alleged must do more than contend medical malpractice, misdiagnosis, accidents, [or] poor exercise of medical judgment.  *Estelle*, 429 U.S. at 104-97, 97 S.Ct. 285.  An allegation of negligence is insufficient to state a due process claim.  *Daniels v. Williams*, 474 U.S. 327, 330-33, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)."  *Simpson v. Holder*, 200 F.App'x 836, 839 (11th Cir. 2006); *Green v. Watson*, 2015 WL 4609977, at *2 (S.D. Ill. July 31, 2015) (Due to "the state of mind requirement for all due process violations[,] ... medical malpractice and negligence claims are not actionable under § 1983, but are the grist of state law.); *Kingsley*, --- U.S. at ---, 135 S.Ct. 2472 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1999)) (With respect to the "legally requisite state of mind" attendant to a defendant's physical acts in determining the objective reasonableness of such acts, "the defendant must possess a purposeful, a knowing, or possibly a [criminally] reckless state of mind.  That is because ... 'liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.'"); *Estelle*, 429 U.S. at 106 (neither negligence nor medical malpractice "become[s] a constitutional violation simply because the victim is incarcerated."); *Farmer*, 511 U.S. at 835, 836, 114 S.Ct. 1970 (A complaint alleging negligence in diagnosing or treating "a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment[,]" nor does it establish the requisite reckless disregard of a substantial risk of harm so as to demonstrate a constitutional violation.); *Daniels*,

---

[4]A medical need is serious if it "'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Goebert v. Lee Cty.*, 510 F.3d 1312, 1325 (11th Cir. 2007) (quoting *Hill*, 40 F.3d at 1187, *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

474 U.S. at 332 (The Constitution "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries....  We have previously rejected reasoning that would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States.") (internal quotations omitted); *Kelley v. Hicks*, 400 F.3d 1281, 1285 (11th Cir. 2005) ("Mere negligence ... is insufficient to establish deliberate indifference."); *Matthews v. Palte*, 282 F. App'x 770, 771 (11th Cir. 2008) (affirming district court's summary dismissal of inmate complaint alleging "misdiagnosis and inadequate treatment [as such] involve no more than medical negligence."); *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) ("[A] plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment."); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (negligence in misdiagnosis of pituitary tumor not sufficient to show deliberate indifference); *Barr v. Fla. Dept. of Corr.*, 2011 WL 1365552, at *4 (S.D. Fla. April 11, 2011) (plaintiff due no relief where misdiagnosis, which led to improper insertion of feeding tube, did not rise to the level of deliberate indifference as misdiagnosis amounted to nothing more than negligence); *Null v. Mangual*, 2012 WL 3764865, at *3-4 (M.D. Fla. Aug. 30, 2012) (Misdiagnosis of inmate with Ganglion cyst that "was eventually diagnosed as synovial sarcoma, a form of skin cancer [leading to a later discovery of] multiple spots of cancer on his lungs ... fail[ed] to show that Defendants acted with deliberate indifference as opposed to mere negligence....  At most, [Defendants] misdiagnosed Plaintiff's growth, which amounts to a claim of negligence or medical malpractice."); *Payne v. Groh*, 1999 WL 33320439, at *5 (W.D. N.C. July 16, 1999) (citing *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986)) ("An allegation of misdiagnosis, even when accompanied by a speculative allegation of subjective intent, amounts only to the state-law tort of medical malpractice, not to a tort of constitutional magnitude for

which Section 1983 is reserved.  Conclusory allegations sounding in malpractice or negligence do not state a federal constitutional claim.").  In addition, *Kingsley's* requirement of a purposeful or knowing state of mind, its assertion that due process protects only against deliberate acts and its affirmation that negligence categorically fails to provide a basis for liability in section 1983 actions, --- U.S. at ---, 135 S.Ct. at 2472, serves to preclude the constitutionalization of medical malpractice claims such as those which allege misdiagnosis or negligent treatment of a condition. Consequently, merely accidental inadequacy, negligence in diagnosis, negligence in treatment and medical malpractice do not suffice to establish the objective component of claims seeking relief for alleged constitutional violations regarding medical treatment provided to an inmate, whether he is a pretrial detainee or convicted prisoner.

Furthermore, "to show the required subjective intent ..., a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference' ... which is in turn defined as requiring two separate things 'awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists [] and ... draw[ing] of the inference[.]'"  *Taylor*, 221 F.3d at 1258 (internal citations omitted).  Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference."  *Farmer*, 511 U.S. at 837; *Quinones*, 145 F.3d at 168 (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).  Additionally, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."  *Farmer*, 511 U.S. at 838.

16

In articulating the scope of inmates' right to be free from deliberate indifference, ... the Supreme Court has ... emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787. Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel,* 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Taylor*, 221 F.3d at 1258 (citation and internal quotations omitted) (To show deliberate indifference to a serious medical need, a plaintiff must demonstrate that [the] defendants' response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law."). Moreover, "as *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545; *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact inmate desires a different mode of treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient). "Self-serving

statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records." *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) (citing *Bennett v. Parker*, 898 F.2d 1530 (11th Cir.1990)).

## C.  The Jail Administrator

Defendant Jennings avers that he is not in any way involved in decisions regarding medical treatment provided to inmates and further maintains that it is the policy of the Tallapoosa County Jail that inmates are provided access to an appropriate level of health care at all times.  Jennings addresses Castillo's claims, in relevant part, as follows:

> The Tallapoosa County Sheriff's Department operates the Tallapoosa County Jail according to a written set of policies and procedures which govern the conduct of persons employed at the jail
>
> I have complied with all policies and procedures of the Tallapoosa County Jail.  I am not aware of, nor have I authorized or allowed, any deviation from said policies and procedures.
>
> All employees at the Tallapoosa County Jail are charged with the responsibility of reporting infractions by fellow officers and reporting any problem to the senior officer present immediately upon learning of the problem.
> ***
> It is the policy of the Tallapoosa County Sheriff's Office that all inmates confined in the Tallapoosa County Jail be entitled to a level of health care comparable to that available to citizens in the surrounding community in order to ensure their physical and emotional well-being.  All medical services rendered to inmates in the Tallapoosa County jail are given under the direction of a licensed health care provider. Sheriff's Office personnel are prohibited from ever summarily or arbitrarily denying an inmate's reasonable request for medical services.  Medical, dental, and mental health matters involving clinical judgments are the sole province of the responsible medical care professional, and no member of the jail staff is allowed to substitute his or her judgment for those of the provider.  Inmates are guaranteed access to any diagnostic, laboratory, or other treatment services as directed by the Jail['s] medical professionals.
>
> The Jail employs a registered nurse, Nurse Cathy Dubose, who is on duty from approximately 8:00 a.m. until 5:00 p.m. on Mondays through Fridays.  She is also on call at all times of the day and night.  The Jail also employs a nurse who works approximately fifteen hours a week at the jail caring for the inmates.  This nurse usually works evenings.  Robert Schuster, M.D., also comes to the Tallapoosa County Jail once a week to see inmates who are referred to him by the nursing staff.

> An inmate requesting any type of health care services may submit either an Inmate Request Form or Medical Request/Charge Sheet stating the service desired.  The shift supervisor ensures that the medical protocol is followed to ensure a safe and secure manner is maintained.
>
> Except in the case of an emergency, each inmate requesting medical services is screened by the jail nurse who then makes a referral to a physician if it is determined that a physician visit is appropriate.  In the event of a medical emergency, or a perceived medical emergency, the shift supervisor arranges for medical services without delay.
>
> Inmates are given prescription medication as prescribed.  Medication is distributed according to instructions from the prescribing physician and is distributed either by or under the direction of the jail nurse.  Records are kept reflecting the medication distributed to an inmate.  The records are placed in the inmate's medical file.
>
> Staff members of the Tallapoosa County Jail take no deliberate action to block, deny, or delay access of an inmate to health care.

*Doc. No. 15-1* at 2-4.

Castillo makes no specific allegations against defendant Jennings in his complaint.  After review of the complaint, it appears that Catillo alleges Jennings acted with deliberate indifference to his medical needs because Jennings did not intervene in the treatment decision of the medical care provider and demand that Castillo receive a different mode of medical care for the pain/swelling/infection in his right knee.  These assertions entitle Castillo to no relief.

Initially, Castillo has failed to establish deliberate indifference on the part of defendant Jennings as he has not demonstrated that Jennings was aware of facts establishing "an objectively serious medical need" nor that this defendant consciously disregarded any known serious risk to Castillo's health resulting from the infection in his knee.  *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk of harm to the inmate); *Quinones*, 145 F.3d at 168 (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference); *Farmer*, 511 U.S.

at 838 (failure to alleviate significant risk that officer "should have perceived but did not" does not constitute deliberate indifference).

Insofar as Castillo seeks to hold defendant Jennings liable for the treatment provided by a medical professional, he is likewise entitled to no relief as

> [t]he law does not impose upon [jailers] a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong. *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment). Moreover, "supervisory [jail] officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. *See, e.g., Durmer v. O'Carroll*, 991 F.2d 64, 69 (3rd Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988)." *Williams v. Limestone County, Ala.,* 198 Fed.Appx. 893, 897 (11th Cir. 2006).

*Cameron v. Allen*, et al., 525 F.Supp.2d 1302, 1307 (M.D. Ala. 2007).

To the extent the complaint can be construed to seek relief from defendant Jennings based on a causal connection between this defendant's actions and the alleged lack of appropriate medical treatment, Castillo is likewise entitled to no relief. To establish the requisite causal connection, Castillo must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [the jail defendant] on notice of the need to correct the alleged deprivation, and [he] fail[ed] to do so[,]" or "a ... custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or ... facts [which] support an inference that [Jennings ] directed the [jail's health care provider] to act unlawfully, or knew that [she] would act unlawfully and failed to stop [her] from doing so." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal punctuation and citations omitted). A thorough review of the pleadings and evidentiary materials submitted in this case demonstrates that Castillo has failed to meet this burden.

The record before the court contains no probative evidence to support an inference that defendant Jennings directed Nurse Dubose to act unlawfully or knew that she would act unlawfully and failed to stop her. In addition, Castillo has presented no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which defendant Jennings failed to take corrective action; instead, the medical records indicate that Castillo had continuous access to medical treatment during his confinement in the jail and received treatment for the infection in his knee during his incarceration at the Tallapoosa County Jail. Finally, the evidentiary materials submitted by the defendants demonstrate that the challenged medical treatment did not occur pursuant to a policy enacted by Jennings. Thus, the requisite causal connection does not exist in this case and liability under the custom or policy standard is not warranted. *Cf. Employment Div. v. Smith*, 494 U.S. 872, 877, (1990); *Turner v. Safley*, 482 U.S. 78 (1987).

Based on the foregoing analysis, defendant Jennings is entitled to summary judgment on Castillo's lack of adequate medical treatment claim.

### D.  Nurse Dubose

Castillo complains that defendant Dubose acted with deliberate indifference to his swollen and painful knee during his incarceration in the Tallapoosa County Jail. *Doc. 1-2* at 4.[5] Castillo contends that upon her initial examination Nurse Dubose only applied "a 'small amount of ointment'" to the affected area, prescribed aspirin for pain which "never helped the swelling nor the severe pain" and left the jail that Friday evening without his having access to medical services over the weekend. *Id*. at 3-5.

---

[5]Castillo makes the conclusory and unsupported allegation that the pain and swelling in his knee resulted from a spider bite. *Doc. No. 1-2* at 2-3.

The evidentiary materials filed by the defendants, including affidavits and relevant medical records, address the allegations of deliberate indifference made by Castillo. A thorough review of these documents demonstrates that the jail at all times maintained access to an on-call medical professional. In addition, jail personnel had the ability to immediately access appropriate outside medical services for any medical emergency. *Doc. No. 15-2* at 3 (Nurse Dubose avers she is "on duty at the jail from approximately 8:00 a.m. until 5:00 p.m. on Mondays through Fridays[,] [and is] also on call when ... not at the jail.... In the event of a medical emergency, or perceived medical emergency, the [jail's] shift supervisor [in my absence] arranges for medical services without delay.").

Nurse Dubose initially examined Castillo on December 14, 2012, a Friday, regarding complaints of pain and swelling in his right knee he believed related to a "spider bite three days ago." *Doc. No. 15-6* at 3. Nurse Dubose responds to the claims presented by Castillo, in pertinent part, as follows:

> On December 14, 2012, I examined the Plaintiff due to his complaints regarding a spider bite on his leg. I observed a soft knot on the inside of his knee. I prescribed, and the Plaintiff received, an antibiotic pill for the next 10 days. I suspected that the knot on the Plaintiff's leg was a staph infection and I treated it as such. I recall Plaintiff being housed in a medical cell for a brief period due to the knot on his leg. Plaintiff never made any complaint of great pain or swelling in his leg.
> It is normal procedure for corrections staff to move inmates from normal population to medical cells if the inmate makes a non-emergency request for medical care. Medical cells are located directly across the hall from the control desk.
> I was in contact with the Plaintiff multiple times a week during 2013 and 2014 as I passed him over the counter sleeping medication he was receiving during this time period. Plaintiff has never made any complaint to me regarding his medical care. Specifically, the Plaintiff never made any complaint regarding his medical care during the approximately one and a half years he was incarcerated after treatment for the knot on his leg.

*Doc. 15-2* at 4.  The assertions made by Nurse Dubose are corroborated by the medical records compiled contemporaneously with the treatment provided to Castillo.

It is undisputed that Nurse Dubose examined Castillo relative to the condition made the basis of the instant complaint and provided treatment to him for this condition in accordance with her professional judgment.  *Doc. No. 15-6* at 3-4.  Specifically, Nurse Dubose diagnosed Castillo with a staph infection and immediately began him on a twice daily dosage of an antibiotic, Bactrim, for ten days.  *Id.* at 4.  Castillo asserts that Nurse Dubose also ordered he take aspirin for his pain.  The medical records likewise establish that Castillo retained the ability to seek additional treatment during the entirety of his confinement at the Tallapoosa County Jail. *Id.* at 2-13.  In addition, Nurse Dubose was on call at all times to address any routine medical concerns and, if Castillo presented with an emergency situation, jail personnel could have summoned outside emergency medical services to treat Castillo.

Under the circumstances of this case, the court concludes that the course of treatment undertaken by Nurse Dubose did not violate Castillo's constitutional rights as it was not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness."  *Harris*, 941 F.2d at 1505.  Although Castillo alleges Nurse Dubose should have provided a pain medication other than aspirin, his mere desire for further a different medication, without more, fails to establish deliberate indifference.  *Garvin*, 236 F.3d at 898 (difference of opinion regarding manner in which to address a situation fails to demonstrate a constitutional violation); *Adams*, 61 F.3d at 1545 (whether medical personnel "should have employed additional ... forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment."); *Hamm*, 774 F.2d at 1505 (inmate's desire for some other form of medical treatment does not

constitute deliberate indifference violative of the Constitution).   To the extent Castillo alleges

that Nurse Dubose did not diligently pursue alternative means of treating his condition, this

allegation does not "rise beyond negligence to the level of [deliberate indifference]."  *Howell v.*

*Evans*, 922 F.2d 712, 721 (11th Cir. 1991); *Franklin*, 662 F.2d at 1344 (simple divergence of

opinions between medical personnel and inmate-patient do not violate the Eighth Amendment).

In addition, Castillo has failed to present any evidence which indicates Nurse Dubose knew that

the manner in which she provided treatment to him created a substantial risk to his health and

that with this knowledge consciously disregarded such risk.   The record is therefore devoid of

evidence, significantly probative or otherwise, showing that the Nurse Dubose acted with

deliberate indifference to Castillo's medical needs.   Moreover, under the circumstances of this

case, it is clear that the medical treatment provided to Castillo was objectively reasonable.

Consequently, summary judgment is due to be granted in favor of Nurse Dubose.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  Costs be taxed against the plaintiff.

It is further

ORDERED that on or before August 14, 2017 the parties may file objections to this

Recommendation.   A party must specifically identify the factual findings and legal conclusions

in the Recommendation to which the objection is made; frivolous, conclusive, or general

objections will not be considered. Failure to file written objections to the proposed findings and

recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

     Done this 31st day of July, 2017.

               /s/Charles S. Coody
               CHARLES S. COODY
               UNITED STATES MAGISTRATE JUDGE